Edward R. **HALTON**

v.

Alton **HESSON,** Acting Warden Turney Center Industrial Prison and Farm.

No. 1:90–0014.

United States District Court, M.D. Tennessee, Nashville Division.

Aug. 20, 1992.

Ronald W. McNutt, Williams & Dinkins, Nashville, Tenn., for plaintiff.

Debra K. Inglis, Norma J. Crippen Ballard, Office of Atty. Gen., Nashville, Tenn., for defendant.

## MEMORANDUM

HIGGINS, District Judge.

The Court has before it the Report and Recommendation of the Magistrate Judge (entered January 14, 1992; Docket Entry No. 41), petitioner Edward R. Halton's objections and exceptions to the Report and Recommendation (filed January 24, 1992; Docket Entry No. 42), and the respondent's objections to the Report and Recommendation (filed January 28, 1992; Docket Entry No. 42). Also before the Court are both parties' responses to the other's objections to the Report and Recommendation (filed February 4 and 6, 1992; Docket Entry Nos. 44 and 45, respectively).

After an extensive review of the file, and for the reasons stated below, the Court adopts in full the recommendations made by the Magistrate Judge in his Report and Recommendation. The objections of the parties are overruled.

**1.** Each of these four grounds had been argued

## I. FACTS AND PROCEDURAL HISTORY

Edward R. Halton was employed as a guard at the Madison County Juvenile Detention Center in Jackson, Tennessee. In 1987, he was convicted of two counts of rape and six counts of sexual battery against seven female juvenile inmates of the detention center. At trial, the prosecution's only proof against Mr. Halton was the uncorroborated testimony of the juvenile inmates. Mr. Halton denied any sexual contact with the inmates. Therefore, the credibility of the inmates and of Mr. Halton were essential elements of each party's case.

After he was convicted and sentenced, Mr. Halton moved for a new trial on the ground that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. The Criminal Court of Madison County disagreed and denied Mr. Halton's motion. The Tennessee Court of Criminal Appeals affirmed the trial court's denial of Mr. Halton's motion, and his application for permission to appeal to the Supreme Court of Tennessee was denied in a *per curiam* order.

Mr. Halton filed this *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254 on January 26, 1990 (Docket Entry No. 2), alleging as grounds for the writ: ineffective assistance of counsel; insufficiency of the evidence; error by the trial judge in ordering consecutive sentences; and error by the trial judge in his jury charge.[1] The Court referred the petition to the Magistrate Judge for consideration of its frivolous nature by order entered May 1, 1990 (Docket Entry No. 18). In his memorandum entered March 8, 1991 (Docket Entry No. 22), the Magistrate Judge determined that the petition was not frivolous, and that further proceedings were necessary. In his accompanying order (Docket Entry No. 23), the Magistrate Judge ordered that counsel be appointed to represent Mr. Halton.

Finding "nothing to show that the Trial Court or the Court of Criminal Appeals

before the Tennessee Court of Criminal Appeals.

applied the correct legal standard in reaching their conclusions that [trial counsel] Hagwood provided petitioner [Mr. Halton] with effective assistance of counsel," the Magistrate Judge held an evidentiary hearing "to flesh out the facts."[2] Memorandum at 11–12. Subsequently, in his Report and Recommendation, the Magistrate Judge recommended: (a) granting Mr. Halton's petition as to all counts in the indictment against him due to the ineffective assistance of trial counsel; (b) in the alternative, granting Mr. Halton's petition only as to Count Three due to the ineffective assistance of trial counsel; (c) granting Mr. Halton's petition as to Counts Four and Five based on insufficiency of the evidence; and (d) dismissing Mr. Halton's remaining claims. Report and Recommendation at 30.

## II. DISCUSSION

### A. *Ineffective Assistance of Counsel*

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court announced that

[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. *First, the defendant must show that counsel's performance was deficient.* This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second, the defendant must show that the deficient performance prejudiced the defense.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93 (emphasis added). This standard is

applicable to federal collateral proceedings, as well as to direct appeals and motions for a new trial. *Id.* at 697, 104 S.Ct. at 2070, 80 L.Ed.2d at 700.

To prove the first component, deficient performance, the convicted defendant, here Mr. Halton, must show that his attorney's "representation fell below an objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The inquiry for a reviewing court "must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. A reviewing court should recognize the strong presumption in favor of finding that the convicted defendant's counsel "rendered adequate assistance," *id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695, and that even seasoned trial attorneys would defend the same defendant in different ways. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

To prove the second component, prejudice, the convicted defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Although prejudice is presumed in some cases of egregious conduct by either the government or defense counsel, *see id.* at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696, in most cases the convicted defendant must prove prejudice. Mr. Halton does not allege any conduct by the State or his attorney which would lead to a presumption of prejudice, therefore, he must prove prejudice in order to prevail on this claim.

Mr. Halton alleges that he was deprived of the effective assistance of counsel because his trial counsel, Stafford Hagwood of Jackson, Tennessee, failed to properly object to certain evidence presented by the State; asked improper questions and made

---

**2.** Although 28 *U.S.C.* § 2254(d) generally "requires a federal court to presume as true the factual findings made by the state trial court," the federal court may make a *de novo* determination of the facts if the material facts were not adequately developed during the proceedings at the state court level. *See* memorandum at 4 (citing *Sumner v. Mata,* 449 U.S. 539, 546–50, 101 S.Ct. 764, 768–71, 66 L.Ed.2d 722, 730–33 (1981)).

improper comments; did not interview any of the victims; did not adequately prepare Mr. Halton for trial; did not visit the crime scene; did not get the detention center records before trial; did not explore all possible defenses; did not interview or call all favorable defense witnesses; failed to develop alibi defenses; failed to interview the State's witnesses; and failed to conduct a pre-trial investigation of the facts surrounding the crimes. Report and Recommendation at 3–4.

The Magistrate Judge found several of these alleged errors and omissions to be serious enough, in the aggregate, to warrant recommending granting Mr. Halton's petition on all counts against him due to ineffective assistance of counsel. *See id.* at 30. The Court agrees with the Magistrate Judge. The proof of deficient performance and prejudice is especially strong surrounding the charge of the sexual battery of Missy Williams. However, the cumulative effect of Mr. Hagwood's errors so tainted the entire trial that the Court must grant Mr. Halton's petition as to all counts of the indictment based on his claim of ineffective assistance of counsel. The Court will now discuss the specific errors alleged by Mr. Halton in his petition.

▮ First, Mr. Hagwood failed to interview or even attempt to interview any of the victims before trial. Motion for new trial, October 29, 1987, transcript at 4 (filed March 6, 1990). This was a serious error, as the defense of Mr. Halton rested primarily on the credibility of Mr. Halton and the lack of credibility of the victims. Trial counsel has broad discretion to conduct pretrial investigations as he sees fit based on the totality of the circumstances then known to him. *See Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Additionally, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. However, this Court cannot find any circum-

stances which would make Mr. Hagwood's total failure to interview the victims before trial appear reasonable.

In *Thomas v. Lockhart,* 738 F.2d 304 (8th Cir.1984), the defendant was charged with rape. Like Mr. Halton, he maintained his innocence. Like Mr. Hagwood, the defense attorney in *Thomas* did not interview the victim before trial, he merely relied on the government's investigative file.[3] *Id.* at 308. Similarly, in *Landers v. Rees,* 782 F.2d 1042 (6th Cir.1985) (unreported disposition), the defendant was charged with repeatedly raping and sodomizing his minor daughter. The Sixth Circuit granted the defendant's habeas corpus petition, in part because the defendant's trial counsel's failure to interview the victim before trial "constituted performance below the standard of reasonable competence and effort." *Id.,* slip op. at 4.

Mr. Hagwood's failure to interview any of the victims before trial ties into his failure to develop crucial alibi testimony surrounding the sexual battery of Missy Williams. The indictment and Ms. Williams' statement were vague concerning the date of the attack. At trial, Mr. Hagwood was able to elicit from Ms. Williams that the attack occurred "about July 6th [1986], something like that" or approximately mid-way through her stay at the detention center from July 2 to July 11, 1986. Trial transcript at 220.

Had Mr. Hagwood gleaned this information before trial, he would have been prepared to offer alibi evidence that Mr. Halton was not at work from July 3 to July 8, 1986. Mr. Halton was busy making preparations for, and attending, his sister-in-law's funeral on those dates. Several people, including Mr. Halton's wife and the undertaker, could have testified regarding Mr. Halton's whereabouts during this time period. In *Thomas,* the court found the defense attorney's failure to pursue possible alibi witnesses provided by the defendant to be an important factor in finding a Sixth Amendment violation.

---

**3.** As discussed below, like Mr. Hagwood, he also failed to investigate potential alibi witnesses brought to his attention by the defendant.

The Court agrees with the Magistrate Judge that it was not error, however, not to present alibi testimony to counter the charge of sexual battery of Teresa Ann Beard, Count Five of the indictment. Ms. Beard testified that she was attacked on the night of April 4, 1986, after she went to bed. Trial transcript at 195–96. Although Mr. Halton had alibi witnesses who were prepared to testify that he was an usher at the Miss Jackson State beauty pageant that evening, the detention center records show that he was at work earlier that afternoon and returned to work that night. Therefore, Mr. Halton's partial alibi in this instance does not foreclose the possibility that he attacked Ms. Beard late on the night of April 4, as she had testified.

Mr. Halton also challenges Mr. Hagwood's failure to call certain defense witnesses, including Mrs. Gloria Halton and Dr. Paul Deschenes. Mrs. Halton was prepared to testify regarding the stability and fulfillment of their marriage, as well as to provide important alibi testimony regarding the time surrounding the assault on Ms. Williams. Motion for new trial, transcript at 37–40. Dr. Deschenes had performed a psychiatric evaluation on Mr. Halton before he began working at the detention center. The evaluation showed that Mr. Halton was not the type of person who would be likely to commit the crimes with which Mr. Halton was charged. *Id.* at 17–18.

However poor Mr. Hagwood's judgment may appear to this Court in retrospect, the Court finds, given trial counsel's broad discretion and the presumption in favor of competence, that it was not error not to call Mrs. Halton to testify at trial. Mr. Hagwood termed his decision not to have Mrs. Halton testify "trial strategy," and stated that he felt she would not "hold up on the witness stand." *Id.* at 12. However, the Court can fathom no rational reason why Mr. Hagwood would not call Dr. Deschenes to testify. The only reason Mr. Hagwood gave for not calling Dr. Deschenes was that his testimony would be offset by the testimony of the victims. *Id.* at 18. That is exactly one of the reasons he should have called Dr. Deschenes to testify. In fact, at the hearing on the motion for a new trial, Mr. Hagwood agreed that he would want someone with professional qualifications such as Dr. Deschenes to testify to offset the testimony of the victims. *Id.*

Mr. Halton also argued, at the evidentiary hearing before the Magistrate Judge, that his petition should be granted because of Mr. Hagwood's failure to call to the witness stand certain of the victims who were prepared to repudiate their prior testimony. During the trial, outside the presence of the jury, Mr. Hagwood sought to examine a witness who had heard an out-of-court statement by Tracy Climer purporting to repudiate her prior testimony. Trial transcript at 177–83. The trial judge did not allow the statement into evidence, in part because he found it did not add anything new to the record. *Id.* at 181. Mr. Hagwood asked for, and received, permission to subpoena Ms. Climer so that he could recall her to the witness stand, but he never had the subpoena served. The issue of repudiation was discussed at the hearing on the motion for a new trial. Motion for new trial, transcript at 21, 33.

The Magistrate Judge determined that the issue of Ms. Climer's repudiation had been sufficiently brought out in the state court proceedings to be presented in the habeas corpus petition. Although the repudiation claim was not raised directly in the petition, since the petition was filed *pro se* and the claim was relevant to other claims in the petition, the Magistrate Judge construed the petition liberally to include the repudiation claim. Report and Recommendation at 12 n. 2. However, he found that Mr. Hagwood's failure to recall Ms. Climer was harmless error, if it was error at all. The Magistrate Judge found that the repudiation claims of other victims had not been exhausted at the state court level, and therefore, could not be presented for the first time in the collateral proceeding. *Id.* at 11–14; *see e.g., Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379, 390 (1982).

The Court does not agree with the Magistrate Judge that the issue of Ms. Climer's

1278

alleged repudiation was exhausted in the state court proceedings. While the issue was discussed during the hearing on the motion for a new trial, it was not raised before the Court of Criminal Appeals. Nor were any of the other victims' alleged repudiations of their trial testimony brought before the Tennessee Court of Criminal Appeals. However, this is not fatal to Mr. Halton's petition, since, as the Magistrate Judge determined, he did not raise this unexhausted issue in his petition. Since the repudiation issue was not exhausted at the state court level, and was not presented to this Court, the Court will not consider the issue now.

■ Finally, Mr. Halton argues that Mr. Hagwood erred by failing to make proper objections, asking improper questions and making improper comments, not visiting the crime scene, and not obtaining records from the detention center. The Court agrees with the Magistrate Judge that these remaining claims of Mr. Hagwood's errors are without merit. A reviewing court should strive "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. This Court cannot say that Mr. Hagwood committed reversible error by the remaining challenged conduct. *See* Report and Recommendation at 21–23.

■ However, for the reasons discussed above, the Court finds that Mr. Halton was deprived of his right to counsel guaranteed by the Sixth Amendment. Considering the totality of Mr. Hagwood's errors during the trial of this matter, the Court finds both that Mr. Hagwood's performance was deficient, and that his deficiency prejudiced Mr. Halton's defense. This is especially true regarding Count Three, the failure to develop alibi testimony surrounding the sexual battery of Missy Williams. However, the Court cannot consider each count in a vacuum. The failure to interview the victims, the failure to develop alibi testimony, and the failure to call Dr. Deschenes to testify, all combine to "render[ ] the result

[of the trial] unreliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

### B. *Sufficiency of the Evidence*

■ "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). With this standard in mind, when a court considers a petition for relief under 28 U.S.C. § 2254 "the relevant question is whether, after viewing the evidence in the light most favorable to the. prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (emphasis original); *see United States v. Pearce,* 912 F.2d 159, 161 (6th Cir.1990), *cert. denied sub nom.· Thorpe v. United States,* —— U.S. ——, 111 S.Ct. 978, 112. L.Ed.2d 1063 (1991). The fact that the jury found Mr. Halton guilty on all counts of rape and sexual battery does not foreclose this Court from granting his petition for habeas corpus. Even "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt...." *Jackson,* 443 U.S. at 317, 99 S.Ct. at 2788, 61 L.Ed.2d at 572.

■ At the time of the trial in this matter, rape was defined as:

(a) Rape is unlawful sexual penetration of another accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act;

Tenn.Code Ann. § 39–2–604(a) (repealed 1989). Sexual battery was defined as:

(a) Sexual battery is unlawful sexual contact with another person accompanied by any of the circumstances listed in § 39–2–604(a).

Tenn.Code Ann. § 39–2–607 (repealed 1989). These accompanying circumstances, coercion and force, were defined as:

"Coercion" means threat of kidnapping, extortion, force or violence to be performed immediately or in the future or the use of parental, custodial, or official authority over a child less than fifteen (15) years of age;

"Force" means compulsion by use of physical power or violence and shall be broadly construed to accomplish the purposes of the Sexual Offense Law.

Tenn.Code Ann. § 39–2–602(1)(3). The Court agrees with the Magistrate Judge that the State did not prove the essential element of coercion in Counts Four and Five of the indictment, the sexual batteries of Tracy Climer and Teresa Ann Beard. *See* Report and Recommendation at 25–27. Therefore, the Court will adopt the Magistrate Judge's recommendation and grant Mr. Halton's petition as to these counts.

■■ Mr. Halton was convicted of the rape of Nora Crawley (Count One) and Rachel Doss (Count Seven), and of the sexual battery of Nora Crawley (Count Two), Missy Williams (Count Three), Tracy Climer (Count Four), Teresa Ann Beard (Count Five), Aimee Scott (Count Six), and Betsy Greer (Count Eight). Each victim testified to events which, if true, would constitute the requisite sexual penetration or contact. The Magistrate Judge found, and the Court agrees, that the second element of the crimes, coercion, is satisfied as to Ms. Doss, Ms. Crawley, Ms. Williams, and Ms. Scott. Each of these girls was less than fifteen years old, and Mr. Halton exerted custodial control over them. *See* Report and Recommendation at 25. Ms. Greer was over fifteen years old. However, she testified that Mr. Halton threatened to keep her at the detention center if she did not obey him. She also testified that she tried to fight Mr. Halton after he entered her room. Trial transcript at 87–88; Report and Recommendation at 25. Therefore, the Court agrees with the Magistrate Judge that the essential element of coercion is satisfied with regard to Ms. Greer.

■■■ The State's proof fails as to Ms. Climer and Ms. Beard. Both were over fifteen years old, therefore the custodial authority definition of coercion is inapplicable. Ms. Beard testified that, when Mr. Halton entered her room and touched her buttocks, she pretended to be asleep. Trial transcript at 191–92. This conduct simply does not rise to the level of coercion or force as defined in the statute. "The assault on [Ms.] Climer is even further divorced from threat of kidnapping, extortion, force or violence." Report and Recommendation at 27. She testified at trial that Mr. Halton grabbed her buttocks, that she told him that she "didn't go for all that," and that he stopped. Trial transcript at 121–23. He did not threaten her. *Id.* at 125. In fact, Ms. Climer considered Mr. Halton's actions part of every day life, and therefore was reluctant to testify at trial against him. *Id.* at 126.

For these reasons, the Court agrees with the recommendations of the Magistrate Judge, and grants Mr. Halton's petition for habeas corpus relief as to Counts Four and Five of the indictment due to the insufficiency of the evidence. The Court denies relief on the remaining counts, finding the evidence sufficient for a reasonable jury to convict Mr. Halton of the crimes alleged in the indictment.

## C. *Other Grounds for Relief*

■■ Mr. Halton next challenges the trial court's imposition of consecutive sentences. Due to his prior convictions, including one felony and two misdemeanor offenses,[4] the trial judge determined that Mr. Halton was a "persistent offender" and sentenced him to serve consecutive sentences. Claims of violations of state law are not cognizable on habeas corpus review unless the violation "could be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29, 35 (1984). Barring a constitutional violation, "federal

---

**4.** Mr. Halton was previously convicted of unemployment compensation fraud (a felony) and of writing bad checks (two misdemeanors). Sentencing hearing, transcript at 4, 6 (filed March 6, 1990).

courts have no right to review any sentence of a state court which does not exceed the statutory maximum sentence which may be imposed under the laws of the state." *Stevens v. Warden, Md. Penitentiary*, 382 F.2d 429, 433 (4th Cir.1967), *cert. denied*, 390 U.S. 1031, 88 S.Ct. 1423, 20 L.Ed.2d 288 (1968). Therefore, the Court agrees with the Magistrate Judge that it may not review the state trial court's imposition of consecutive sentences. Report and Recommendation at 28.

■ Mr. Halton's final challenge is to the trial court's jury instructions. He argues that the trial court erred by not instructing the jury on all lesser included offenses, not instructing the jury to consider each count separate and apart, placing undue influence on the terms "rape" and "assault," not instructing the jury on the need to reach a unanimous verdict, and not providing the jury with written instructions. The standard for reviewing jury instructions for a habeas corpus petition is "whether the ... instruction in a state criminal trial so offended established notions of due process as to deprive the respondent of a constitutionally fair trial." *Cupp v. Naughten*, 414 U.S. 141, 144, 94 S.Ct. 396, 399, 38 L.Ed.2d 368, 372 (1973). The Court agrees with the Magistrate Judge that these claims are without merit and "are not cognizable on habeas review because they do not implicate fundamental fairness." Report and Recommendation at 29, 30.

## III. CONCLUSION

For the reasons stated above, the Court adopts in full the recommendations made by the Magistrate Judge in his Report and Recommendation. Therefore, Mr. Halton's petition for the writ of habeas corpus is granted on all counts of the state indictment due to the ineffectiveness of Mr. Halton's trial counsel, and on Counts Four and Five of the indictment due to insufficiency of the evidence. Mr. Halton's petition is denied as to all other claims.